## CURETON *v.* CURETON *et al.*

120 559
e123 420
123 602
120 559
124 374

1. A surety who pays the full amount due on a fi. fa., but does not have any entry of payment indorsed thereon, and allows the judgment to become dormant, is not equitably subrogated to the rights of the plaintiff in the judgment so as to enforce contribution against a cosurety. . The surety must not only pay the amount due on the fi. fa., but must also have the entry of

payment made thereon, before he can control the judgment and fi. fa. against a cosurety.

2. An amendment to the pleadings, raising new and distinct issues, is not allowable after the filing of an auditor's report. But an amendment of a pleading to conform to the evidence submitted before the auditor without objection, and which does not raise any new issue, is permissible.

3. A defendant, pending a suit, executed to his wife a deed to certain realty. Upon his death, his widow and children were made parties to the suit in his stead. Before the trial of the case, the realty conveyed by the original defendant to his wife was divided between her and her children, pursuant to a written agreement which stipulated that the children should pay all demands against the deceased husband and father. Deeds with covenants of warranty were executed by the mother to the children, as provided in the agreement. The suit resulted in a judgment; and one of the children, to prevent a sale of his property, satisfied the judgment by paying not only his proportionate part thereof but also a balance due thereon which should have been paid by two of the children. *Held*, that there was no breach of the warranty of title from the mother to the child who thus discharged the debt of his father.

Argued May 24, — Decided July 13, 1904.

Exceptions to auditor's report.    Before Judge Fite.    Dade superior court.    March 20, 1903.

*W. U. & J. P. Jacoway* and *R. J. & J. McCamy*, for plaintiff.

EVANS, J.    A suit was brought in Dade superior court in favor of the ordinary, for the use of the heirs of one Derryberry, against his administrator and the sureties on his bond, one of whom was James W. Cureton, for the recovery of a devastavit by the administrator.    Pending this suit James W. Cureton conveyed certain real property to his wife, Nancy E. Cureton.    Shortly thereafter James W. Cureton died, and his widow and children were made parties to the Derryberry suit in his stead.    While this suit was still pending the following agreement was entered into between the widow and children of James W. Cureton:  " State of Georgia, Dade County.    Know all men by these presents, that we, John A. Cureton, Geo. W. Cureton, William C. Cureton, Mary E. Cureton, and Sallie F. Brock, heirs at law of Nancy E. Cureton and of lawful age, having this day agreed upon the following division of the lands belonging to our mother, Nancy E. Cureton, she consenting to and directing this division be made.    The value placed upon said land by our mother, Nancy E. Cureton, and agreed to by us, is as follows, to wit:  The home place, being lots and parts of lots Nos 46, 48, 49, 50, 58, and 59, in the eighteenth

district and 4th section of Dade county, Ga., including the mill and water privileges, at five thousand five hundred dollars ($5,-500.00); the Morrison place, being lots of land Nos. 32 and 39 in the 18th dist. and 4th section of said county, at three thousand dollars ($3,000.00); the undivided one-half interest in the Wilkinson mill place, being lots of land Nos. 286, 287, 289, 290, 291, and 292, in the tenth district and 4th section of Dade county, Ga., including the mill and water privileges, at two thousand and five hundred dollars ($2,500.00). It is further agreed by all the parties to this contract, Nancy E. Cureton consenting thereto, that the said Nancy E. Cureton shall execute and deliver to Geo. W. Cureton good and sufficient deed to the lands above described as the home place, including the mill, for the sum of five thousand five hundred dollars ($5,500.00), to be paid as follows: twelve hundred dollars, $1,200.00, to his sister Sallie F. Brock, and one hundred dollars, $100.00, to Mary E. Cureton, and twelve hundred dollars, $1,200.00, to be retained by the said Geo. W. Cureton as his own; and for the balance the said Geo. W. Cureton shall make and deliver to Nancy E. Cureton three promissory notes for one thousand dollars ($1,000.00) each, with a mortgage on the lands conveyed to him to secure the payment of said notes at maturity, the notes to bear even date with these presents and due five years after date or at the death of the said Nancy E. Cureton, with interest from date at six per cent. per annum, the interest to be paid on the 1st day of January in each year to the said Nancy E. Cureton; and at the maturity of said notes they, with the accrued interest thereon (if the interest has been paid up to the first of January of the year they mature), shall be paid off as follows: one note, with accrued interest as above named, to Mary E. Cureton; one of the notes, with accrued interest above named, to Sallie F. Brock; and the other note, with accrued interest as above named, to Geo. W. Cureton. It is further agreed that the said Geo. W. Cureton accepts the deed subject to the rights of his mother, Nancy E. Cureton, to hold and occupy during her lifetime the dwelling-house. It is further agreed by all the parties to this contract, the said Nancy E. Cureton consenting thereto, that Nancy E. Cureton shall execute and deliver to the said William C. Cureton good and sufficient title to the lands above designated as the Morrison place, at and for the sum

of three thousand dollars ($3,000.00), to be paid as follows, to
wit: eight hundred dollars ($800.00) to his sister Mary E. Cure-
ton, and twelve hundred dollars ($1,200.00) to be retained by the
said William C. Cureton as his own; and for the balance the said
William C. Cureton shall make and deliver to Nancy E. Cureton
a note for one thousand dollars ($1,000.00), with a mortgage on
the land conveyed by him to secure payment of said note at ma-
turity, the note to be of even date with these presents and due
five years after date or at the death of the said Nancy E. Cureton,
with interest from date at 6% per annum, the interest to be paid
on the first day of January each year to the said Nancy E. Cure-
ton ; and at the maturity of said note it, with the accrued interest
thereon (if the interest has been paid after the 1st day of Janu-
ary of the year it matures), shall be paid to the said William C.
Cureton.　　It is further agreed by all the parties to this contract,
the said Nancy E. Cureton consenting thereto, that Nancy E.
Cureton shall execute and deliver to the said John A. Cureton
good and sufficient deed to the undivided one-half interest in the
lands above designated as the Wilkinson mill property, including
the mill and water rights, at and for the sum of two thousand and
five hundred dollars ($2,500.00), to be paid as follows, to wit:
three hundred dollars to his sister Mary E. Cureton and twelve
hundred dollars ($1,200.00) to be retained by the said John A.
Cureton as his own; for the remainder the said John A. Cureton
shall make and deliver to Nancy E. Cureton his promissory note
for the sum of one thousand dollars ($1,000.00), with a mortgage
on the mill and water privileges conveyed to him, to secure the
payment of said note at maturity ; the note to be of even date
with these presents and due five years after date or at the death
of the said Nancy E. Cureton, with interest from date at 6% per
annum, the interest to be paid on the first day of January each
year to the said Nancy E. Cureton, and at maturity said note,
with the unpaid interest thereon (if the interest has been paid up
to the first of January of the year it matures), shall be paid to
the said John A. Cureton.　It is further agreed by the parties to this
contract that upon the failure to pay the interest as specified in
this contract or within a few thereafter, upon the above and fore-
going notes or either of them, the interest on such note or notes
shall be compounded, and the interest so unpaid up to the first

of January of the year of the maturity of such note or notes shall be collected by the said John A. Cureton, Geo. W. Cureton, William C. Cureton, Mary E. Cureton and Sallie F. Brock and equally divided between them. It is further agreed by all the parties to this contract that should any debts now unknown to the administrator come against the estate of our father, James W. Cureton, that each one of us will pay our pro rata part thereof. Witness our hands and seals, this 19th day of April, 1888." Signed and sealed by Nancy E. Cureton and the other parties above named.

After this agreement was entered into there was a consent verdict rendered in the Derryberry suit in favor of the plaintiff for the sum of $5,000, one half of which was to be paid by the widow and children of James W. Cureton. Three of the children, to wit, George W., William C., and Mary E. Cureton, paid their proportionate part of the judgment entered upon the verdict, and a fi. fa. for the balance was levied on property belonging to George W. Cureton, in order to collect the amount due thereon by the other children, John A. Cureton and Sallie F. Brock. To prevent the sale of his property George W. Cureton paid the balance due on the fi. fa., but did not have the fact of payment indorsed upon it. Several years thereafter Nancy E. Cureton filed her bill against George W. Cureton, praying an accounting of various matters therein set up; whereupon he filed an equitable petition in the superior court of said county against Nancy E. Cureton, John A. Cureton and his wife, Nancy A. Cureton, Mary E. Cureton, and Sallie F. Brock, praying for an accounting and settlement of certain differences between himself and the defendants, set out in his petition. This petition was answered by all of the defendants, and the case was then referred to an auditor. The auditor found and reported, among other things, (1) that George W. Cureton paid to the plaintiff in the Derryberry suit the balance on the fi. fa. which represented the proportionate shares of John A. Cureton and Sallie F. Brock; (2) that this occurred in 1892, but George W. Cureton never had any entry of payment indorsed on the fi. fa., and took no steps to enforce the collection of his demand for contribution after September 28, 1893; (3) that as more than seven years had elapsed from that date before the filing of the present suit, George W. Cureton had, by his long delay

and laches, lost his right to enforce contribution, and his demand was barred by the statute of limitations; but inasmuch as no plea of the statute of limitations had been filed, he (the auditor) recommended that the pleadings be amended so as to set up this defense, and, when so amended, that the claim of George W. Cureton against John A. Cureton be held to be barred by the statute. The auditor further found that under the agreement between the widow and children of James W. Cureton, the children assumed all debts which might be chargeable against his estate and agreed to save the widow harmless, and for this reason there was no breach of the warranty in her deed to the plaintiff made in pursuance of this agreement.    No exceptions of fact were filed to the auditor's report, but George W. Cureton filed certain exceptions of law thereto. In his first exception he complained, that, under the facts as reported by the auditor, he had become the equitable owner of the judgment and had the same right to collect from John A. Cureton the amount paid out for him as the original owner of the execution had; and that inasmuch as the plaintiff in execution would not be barred from reviving the judgment, he (George W. Cureton) was not barred by the statute, and had a right in the present proceeding to revive the judgment and enforce it against his cosurety, John A. Cureton. In another exception complaint was made of the ruling of the auditor to the effect that inasmuch as John A. Cureton had not pleaded the statute of limitations, he was liable to contribution, but that, upon the pleadings being amended so as set up the statute as a defense, he should be held to no liability to the plaintiff.    The error assigned upon this ruling was that it was too late, after the hearing had before the auditor, for John A. Cureton to so amend his pleadings. In a third exception George W. Cureton complained that the auditor erred in finding that there was no breach of the warranty made to him by Nancy E. Cureton in her deed to him. In still another exception filed by George W. Cureton, he assigns error upon the finding of the auditor that the amount which John A. Cureton should have paid the plaintiff, by way of contribution, was a certain sum less than that claimed to be due.    The court overruled all these exceptions, allowed the pleadings to be amended by setting up the statute of limitations, and entered a decree accordingly.    To the disposition thus made of the case George W. Cureton duly ex-

cepted, and brought it to this court for review.    Pending the suit in the court below Sallie F. Brock paid to George W. Cureton the money which he had advanced for her in paying off the Derryberry fi. fa., and so much of the case as related to relief against her was thereby eliminated.

1. From the findings of fact reported by the auditor it appears that more than seven years had elapsed from the rendition of the judgment in the Derryberry suit before the present proceeding was commenced.    That judgment was dormant and could not be enforced.    The judgment plaintiff or his assigns had the right to revive it, but the lien of the revived judgment would only date from the judgment of revival.    Any payment to a plaintiff in execution, made on a live fi. fa., by one surety for a cosurety would entitle the surety making the payment to be subrogated to the right of the plaintiff in execution to control the fi. fa. against such cosurety, provided an entry of the payment was duly indorsed upon the fi. fa.    Civil Code, §§ 2986, 2989.    But a surety who pays an amount on a fi. fa. which is due by a cosurety, without having the fact of payment indorsed on the fi. fa., is not entitled to be subrogated to the rights of the plaintiff in execution with respect to the enforcement of the same.    Two things are necessary, under the statute, before a surety who pays off an amount due by a cosurety on an execution is entitled to control the fi. fa. for contribution, viz., payment of the fi. fa., and an entry thereon evidencing such payment.    *Thomason* v. *Wade*, 72 *Ga.* 160.    A surety who allows nine years to elapse without making any effort to have such an entry made, and takes no steps to avail himself of the ample remedy afforded him by the statute, loses his right to demand contribution from his cosurety; and, having lost this right through his own inexcusable laches, he can not be heard to assert any equitable right to subrogation.    The surety can not reimburse himself through the agency of the execution, where the judgment is dormant.    Whatever right to subrogation the surety might have, if any, would be by scire facias to revive the judgment.

2. All parties "may, at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or of substance."    Civil Code, § 5097.    This right to amend exists even after the evidence has been concluded and the jury have the case under consideration.    *Bryant* v. *Hambrick*, 9 *Ga.*

133. Amendments may be allowed when the judgment of the court has been orally announced but before it has been entered. *Lytle* v. *De Vaughn*, 81 *Ga.* 226 ; *Freeman* v. *Brown*, 115 *Ga.* 23 (1). But it is too late to amend the pleadings after verdict and judgment. *So. Mutual Ins. Co.* v. *Turnley*, 100 *Ga.* 296 (7). Is the report of an auditor, duly filed in accordance with the order of reference, to be treated as the equivalent of a verdict or judgment, so as to prevent any further amendment of the pleadings in the case? The findings of fact by the auditor may be said to be closely analogous to a special form of verdict, where the various issues are submitted for a special finding on each. There is this difference, however, between a special verdict and an auditor's finding of fact. The former is an integral result, and can not be revised by changing any particular finding on a special issue, without vacating the entire verdict. In the case of an auditor's report on the facts, the reversal of the auditor's finding on any special issue may not have the effect of setting aside the whole report, but a decree may be entered in accordance with the various findings of fact. In the present case the auditor reported certain evidence heard by him without objection. This evidence, in the opinion of the auditor, authorized a finding that the plaintiff's demand was stale; but inasmuch as the statute of limitations was not pleaded, the auditor reported to the court the facts showing the demand was stale, and suggested the allowance of an amendment to the plea, setting up the statute of limitations. No objection was made before the auditor to evidence showing the demand of the plaintiff in this particular was stale. The court allowed the amendment suggested by the auditor, over the objection of plaintiff. An amendment to the pleadings, setting up new and distinct issues, is not allowable after the filing of an auditor's report. *Milner* v. *Mut. Benefit Asso.*, 104 *Ga.* 101. To allow a party to amend his pleadings after the hearing before the auditor would be to make the trials interminable. Besides, the statute empowers the auditor to allow amendments to pleadings while the case is before him. Civil Code, § 4583. This is the opportune time to present any proper amendment suggested on the trial of the case. But where the scope of the amendment offered after the filing of the report is to adjust the pleadings to the evidence which was admitted without objection, the amendment may be allowed, if it

does not set up a new and distinct issue. The matter to which the amendment related was involved in the original issue, and no new issue was raised. If the opposite party had other evidence which he wished to submit on this particular subject, he could have moved to recommit the case to the auditor in order that he might introduce his evidence. In the absence of any such motion, it was not error for the court to allow the amendment and to enter a decree accordingly.

3. It will be seen from the written agreement between Nancy E. Cureton and her children that the land which her deceased husband had conveyed to her was valued at $11,000, and consisted of three tracts. The scheme was to give to each of the children an advance of $1,200, and to reserve $5,000 for the widow. Accordingly, George W. Cureton, who was to get the most valuable tract, assumed to pay Mary E. Cureton $100, Mrs. Brock $1,200, and his mother $3,000. The remainder of the land was conveyed to John A. and William C. Cureton, and each was to pay their mother $1,000; the first named was also to pay his sister, Mary E. Cureton, $800, and the second named was to pay her $300. Thus, by agreement, Mrs. Brock and Mary E. Cureton were each to receive $1,200 in cash; Mrs. Nancy E. Cureton was to be paid $5,000, and the three brothers were to take the land at an agreed valuation which, after payment of certain specified amounts, would give to each an interest of $1,200. The agreement was perfected by the execution of deeds containing covenants of warranty of title. The agreement distinctly provided that the five named children should assume any liability which might in the future come against the estate of their deceased father, James W. Cureton. The Derryberry judgment was a liability of his estate; and inasmuch as his children had contracted to save their mother harmless from this judgment, by an agreement which was the consideration of the deeds by which the three brothers obtained title to the land there could be no breach of the covenants of warranty of their mother, and the auditor correctly so found and reported.

*Judgment affirmed. All the Justices concur.*